IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-CT-3113-FL

| LEONARD CYNOR, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | ORDER |
| JEFFERY LASSITER, Correctional Enterprise Manager, | ) | |
| Defendant.[1] | ) | |

The matter now comes before the court on defendant's motion for summary judgment (DE 27) pursuant to Federal Rule of Civil Procedure 56. The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants defendant's motion.

**STATEMENT OF THE CASE**

On May 28, 2015, plaintiff, a state inmate, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging defendants violated his constitutional rights by creating an unsafe work environment that caused him to suffer "severe second and third degree burns." (Compl. (DE 1-1) at 7). The court conducted a frivolity review on December 3, 2015 and dismissed former defendants North Carolina Department of Public Safety ("DPS") and Correctional Enterprise from this action (DE 8). Plaintiff's claims against Jo Lassiter ("Lassiter") survived review. On April 26, 2016, plaintiff filed a motion to amend his complaint to correctly reflect Lassiter's name as Jeffery Lassiter (DE 18), which was granted (DE 24).

---

[1] The court constructively has amended the caption of this order to reflect dismissal of previously-named defendants, and to correct Lassiter's name, as set forth in more detail herein.

Lassiter filed the instant motion for summary judgment on October 28, 2016. In support thereof, Lassiter attaches the following: 1) DPS Offender Public Information report pertaining to plaintiff; 2) affidavit of Finesse Couch, executive director of North Carolina inmate grievance resolution board with relevant grievances; 3) affidavit of Joe Simpson, director of safety, occupational and environmental Health for DPS with relevant policies and accident report; 4) affidavit of defendant Lassiter with exhibits; and 5) affidavit of Lori Lou Jackson, lead nurse/nurse supervisor at Caledonia Correctional Institution ("Caledonia") along with relevant medical records. (See DE 30).

Plaintiff submitted a letter to the court on December 14, 2016, which the court construes as his response to the instant summary judgment motion (DE 36).

## STATEMENT OF THE FACTS

The facts viewed in light most favorable to plaintiff may be summarized as follows. Plaintiff's claims are centered on his assertion that Lassiter was deliberately indifferent to his safety by creating a hazardous work environment. (See, e.g., Compl. (DE 1-1), p. 3). Plaintiff is a state inmate serving a life sentence. (See DE 30-1). Defendant is employed by Correctional Enterprise as a manager for Caledonia Cannery ("cannery"). (Lassiter Aff. (DE 30-4) ¶ 3). Correctional Enterprise trains inmates by mirroring a work environment. (Id. ¶ 4). The cannery processes and cans crops grown on the premises for distribution to prison kitchens. (Id. ¶ 5). Plaintiff began working at the cannery on October 8, 2013. (Id. ¶ 8). Before starting, plaintiff received orientation and training on all cannery machinery. (Id. ¶¶ 12, 14). This training included a review of proper safety procedures and practice. (Id.) Plaintiff signed an acknowledgment indicating he received this training on January 19, 2012. (Id. ¶¶ 11, 13). Similarly, an Inmate Work Program Manual was also

2

reviewed with plaintiff. (Id. ¶ 14). After this review, plaintiff again acknowledged that he was provided with training on the safe operation of cannery equipment. (Id.) In addition to this training, plaintiff was instructed to ask for assistance whenever he needed help. (Id. ¶ 12). Plaintiff was notified that failure to adhere to proper procedures and rules would result in his dismissal from Correctional Enterprise. (Id. ¶ 14). Work gloves and aprons were available to plaintiff while he was working. (Id. ¶ 15).

At the cannery, there are eight retorts operating simultaneously, and it is the job of the front retort operator to monitor the lights on the control panel to determine which retort is nearing the cooking completion cycle. (Simpson Aff. (DE 30-3) ¶ 14). A blue light indicates an approximately 10 minute long cooling cycle. (Id.) When the light turns red, the front operator must then monitor a steam gauge to ensure the reading is "0 PSI." (Id.) After this verification, the front operator must open the steam valve located on top on the retort lid to ensure that there is not any latent steam remaining in the retort. (Id, ¶ 15). If steam is still escaping through the valve, the operator is to close the valve and extend the cooling period. (Id.) When steam is no longer escaping from the valve, the front operator signals the back operator. (Id.) As an additional precaution, the front operator stands to one side and loosens the front lid securing clamps. (Id.) This precaution allows any remaining steam to exit and reduces the possibility of injury for those standing near the securing clamp location. (Id. ¶ 17). If no steam escapes, the front operator indicates to the back operators that the clamps can be removed. (Id. ¶ 16).

On November 6, 2013, plaintiff was assisting another inmate with removing baskets of cooked vegetables from the retorts. (Id. ¶ 18). The cooking cycle was ending on retort number three, and plaintiff was working as the front retort operator. (Id.) Plaintiff was burned with steam,

3

incurring second degree burns on both legs. (Id.). DPS investigated the incident. (Id. ¶¶ 6-8). It was determined that plaintiff failed to ensure that steam had been fully released from the retort. (Id. ¶ 19). Likewise, plaintiff did not stand to one side and loosen the securing clamp before fully opening it. (Id.) The investigation further revealed that plaintiff had been properly trained, and, to this end, plaintiff verified that he understood the proper safety procedures for operating the retort equipment after the incident. (Id. ¶¶ 21-22). Likewise, reasonable safety equipment was provided for plaintiff. (Id. ¶ 25). Based on these findings, it was determined that plaintiff's injuries were caused by his failure to follow the proper safety procedures and guidelines for operating the retort. (Id. ¶ 24). There is no evidence on the record indicating that defendant was directly involved in this incident. Nor is there any evidence that defendant had actual or constructive knowledge that any of his subordinates were engaged in conduct that posed a risk to plaintiff's safety.

Plaintiff received immediate medical treatment for his injuries at Caledonia. (Id. ¶ 26). He was later transferred to Halifax Regional Hospital. (Id.) Plaintiff also received treatment at the North Carolina Jayce Burn Center. (Id.)

On May 24, 2014, plaintiff filed a claim for damages under the North Carolina Tort Claims Act. (Def. Ex. 1 (DE 28-1) at 1). In such claim, he alleged that defendant was negligent for failing to provide reasonably safe equipment. Id. Plaintiff's claim was dismissed with prejudice. (Def. Ex. 2 (DE 28-2) at 3). Specifically, it was determined that plaintiff must pursue a negligence claim under the Workers' Compensation Act instead. (Id. at 2).

4

**DISCUSSION**

A.   Motion for Summary Judgment

  1.   Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

  2.   Analysis

Lassiter raises the affirmative defense that plaintiff failed to exhaust his administrative remedies. Title 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust his administrative remedies before filing an action under 42 U.S.C. § 1983 concerning his confinement. Ross v. Blake, __ U.S. __, 136 S. Ct. 1850, 1856 (2016) ("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."); Woodford v. Ngo, 548 U.S. 81, 83-85 (2006); see Jones v. Bock, 549 U.S. 199, 217 (2007) ("failure to exhaust is an affirmative defense under [42 U.S.C. § 1997e]"); Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005). The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until

such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford, 548 U.S. at 84. Exhaustion is mandatory. Woodford, 548 U.S. at 85; Porter v. Nussle, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory."); Anderson, 407 F.3d at 677. A prisoner must exhaust his administrative remedies even if the relief requested is not available under the administrative process. Booth v. Churner, 532 U.S. 731, 741 (2001). "[U]nexhausted claims cannot be brought in court." Jones, 549 U.S. at 211.

Here, the record indicates that plaintiff fully exhausted at least one grievance regarding the injuries he sustained on November 6, 2013. (Couch Aff. (DE 30-2) ¶ 8). This grievance does not specifically name Lassiter. (Id.) To satisfy the exhaustion requirement, grievances must be sufficient in detail to alert the prison to the nature of the wrong for which redress is sought. Moore v. Bennette, 517 F.3d 717, 726 (4th Cir. 2008); Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002). However, "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievance." Bock, 549 U.S. at 219. In this posture, the court declines to dismiss plaintiff's claims based on an alleged failure to exhaust.

However, plaintiff's claims fail on the merits. "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was objectively sufficiently serious"–and the second prong

is subjective–the prisoner must show that "subjectively the officials act[ed] with a sufficiently culpable state of mind." See Strickler, 989 F.2d at 1379 (quotations omitted).

Assuming without deciding that plaintiff is able to satisfy the objective prong of the Eighth Amendment test, the court focuses on the subjective prong–whether defendants acted with deliberate indifference to a serious risk to plaintiff's safety. "[D]eliberate indifference entails something more than negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995).

"[P]rison officials . . . must take reasonable measures to guarantee the safety of the inmates." Farmer, 511 U.S. at 832–33 (internal quotation and citation omitted). However, prison official will not be liable for a failure to protect an inmate "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. Plaintiff's allegations fall far short of this standard. The unrefuted evidence on the record indicates that plaintiff received proper training and was provided proper safety equipment. The record also indicates that plaintiff's injuries were promptly treated. There is simply no evidence to support plaintiff's claim that Lassiter knew of and ignored an excessive risk to plaintiff's safety. At best, plaintiff alleges negligence. Mere negligence, however, is insufficient to state a constitutional claim. See Shakka, 71 F.3d at 166; see, e.g., Worley v. Stanley, No.

5:09-CT-3175-FL, 2012 WL 27300, at *4 (E.D.N.C. Jan. 4, 2012) (dismissing prisoner § 1983 complaint alleging unsafe work conditions), aff'd, 473 F. App'x 264 (4th Cir. 2012).

Moreover, it appears Lassiter is named solely in his supervisory capacity. The Fourth Circuit has set forth three elements necessary to establish supervisory liability under § 1983:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff;
>
> (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and
>
> (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." Id.; see also Wellington v. Daniels, 717 F.2d 932, 936 (4th Cir.1983) (supervisory liability requires "a history of widespread abuse."). As noted above, plaintiff's allegation fall well short of this standard.

In summary, because there is no evidence in the record that Lassiter actually knew of and disregarded an excessive risk to plaintiff's safety while plaintiff was performing his work assignment, plaintiff has not established the second prong of the Eighth Amendment test. Based upon the foregoing, the court finds that plaintiff fails to satisfy the subjective prong of the Eighth Amendment test, and is unable to establish a constitutional violation

Finally, a district court may decline to exercise supplemental jurisdiction over a claim if the district court dismisses all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3); see Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995); see also, Gantt v. Whitaker, 203 F. Supp.2d 503, 512 (M.D.N.C. Feb. 26, 2002) (declining to exercise supplemental jurisdiction over plaintiff's state law claims including those again the sheriff's official bond), aff'd, 57 F. App'x 141 (4th Cir. 2003). Although he does not explicitly do so, to the extent plaintiff intends to raise state law negligence claims, the court declines to exercise its supplemental jurisdiction over such claims. Accordingly, any state law claims are DISMISSED without prejudice.

## CONCLUSION

In summary, defendant's motion for summary judgment (DE 27) is GRANTED, and plaintiff's federal claims are DISMISSED, and any potential state law claims are DISMISSED without prejudice. The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 29th day of August, 2017.

_____
LOUISE W. FLANAGAN
United States District Judge